# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01282-COA

THADDEUS L. JARVIS, JR. A/K/A THADDEUS          APPELLANT
LATHOMAS JARVIS A/K/A NO A/K/A
THADDEUS L.  JARVIS

v.

STATE OF MISSISSIPPI                            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/14/2017 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 02/19/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**TINDELL, J., FOR THE COURT:**

¶1.    A Madison County jury convicted Thaddeus Jarvis Jr. of one count each of armed robbery, kidnapping, burglary, and conspiracy to commit armed robbery.  The Madison County Circuit Court then sentenced Jarvis as a habitual offender to concurrent sentences of thirty-five years for armed robbery, thirty years for kidnapping, twenty-five years for burglary of a dwelling, and five years for conspiracy to commit armed robbery, all in the custody of the Mississippi Department of Corrections (MDOC).  On appeal, Jarvis argues the circuit

court erroneously admitted into evidence two Facebook videos because the videos' prejudicial effect significantly outweighed their probative value. Finding no error, we affirm Jarvis's convictions and sentences.

**FACTS**

¶2. Around 7 a.m. on September 12, 2016, two men forcibly entered Christopher and Hilda Crawford's home in Madison County, Mississippi, and robbed the Crawfords at gunpoint. Christopher testified that, as he went into his garage to leave for work, two assailants with Glock-style pistols forced him back into his home. Although the gunmen wore bandanas over the bottom portion of their faces and ordered him to lie face down on the floor, Christopher was able to provide the police with a physical description of the men. Christopher testified at trial that the men were two black males—one man was darker skinned and about 6'1" to 6'2", and the second man was lighter skinned and about 5'6" to 5'8". The two assailants demanded money and jewelry and then forced Christopher into his bedroom, where his wife was sleeping. One gunman held the Crawfords in their bedroom while the other rummaged through drawers in various parts of the house. The gunmen stole about $73,000 in cash and jewelry, including Christopher's Presidential Rolex watch, Hilda's Rolex, a gold-coin pendant necklace, several diamond rings, and $7,500 in cash. Before leaving the Crawfords' home, the gunmen covered Christopher's head with a pillowcase and instructed him to count to one thousand before removing the pillowcase. The gunmen also warned the Crawfords to not call the police. After the gunmen left, the Crawfords went across the street to Hilda's mother's home and phoned the authorities.

2

¶3.    When the police arrived, they took into evidence a piece of a white car, called a ground effect, that had fallen off at the end of the Crawfords' driveway. The police also found video footage from a neighbor's security camera that showed a white car pull up to the Crawfords' residence. Two men exited the vehicle and walked toward the Crawfords' home. The police learned that a neighbor had also seen a white two-door car with a specialty Reservoir license plate parked in front of the Crawfords' home around the time of the home invasion. The neighbor reported that the car's passenger window was partially rolled down with hand prints along the top as though someone had tried unsuccessfully to pull up the window.

¶4.    Ridgeland Police Detective Adrian Ready investigated the home invasion. Detective Ready testified that the police received an anonymous tip from a caller who stated that he believed Steve Milton and another man named "Lucky" had committed the home invasion. The caller reported that the two men and Milton's girlfriend, Stacy Duckworth, were staying at Room 311 of the Extended Studio Hotel off Fortification Street in Jackson, Mississippi. The caller mentioned details about the home invasion not released to the public. Based upon the caller's information, the police obtained a search warrant and discovered Duckworth and Milton inside the hotel room. In addition to finding a GPS with the Crawfords' address typed into it, the police seized a cell phone with a picture taken the day of the home invasion that showed a black male wearing a Presidential Rolex exactly like the one stolen from the Crawfords.

¶5.    At the time the police entered the hotel room, Duckworth was texting Christopher.

Duckworth told police that she and Christopher had been in a dating relationship for the past five years. At trial, Christopher confirmed his affair with Duckworth. Christopher's text messages to Duckworth indicated that he suspected Duckworth's boyfriend, Milton, of having a part in the home invasion.

¶6. Although Milton and Duckworth did not know "Lucky's" real name, they told police that he lived in another room at the hotel. Duckworth also mentioned that "Lucky" drove a white two-door Infiniti. Upon searching the parking lot, the police located a white two-door Infiniti G35 with a Reservoir license plate. The car's passenger-side window was partially down with hand prints along its top as though someone had tried to force the window back up. The car was also missing a ground effect behind the front passenger-side wheel. Detective Ready testified that the ground effect found at the Crawfords' home matched the one missing from the front passenger side of the Infiniti G35. The police checked the car's license plate and learned it had recently been reported stolen from Pearl, Mississippi. Detective Ready remembered working on a prior armed-robbery case involving a suspect named "Lucky" who lived in Pearl. The connection helped police locate Gregory Trigg's mother, who confirmed "Lucky" was her son's nickname. The police returned to the Extended Studio Hotel with a driver's license photo of Trigg. The hotel's management confirmed that Trigg had a room directly across from Milton and Duckworth's room. Hotel management also revealed that Trigg had previously had a roommate, Jarvis, but that Trigg and Jarvis had requested two new separate rooms after the police executed their search warrant on Milton and Duckworth's room.

4

¶7.     During their investigation, the police discovered a gas-station video from the day before the home invasion that showed Trigg and Jarvis together in a white two-door car. Like the assailants described by Christopher, Trigg was darker skinned and several inches taller than Jarvis, who was lighter skinned. The police also checked Trigg's and Jarvis's social media accounts. On Trigg's Facebook account, the police discovered two videos Trigg had posted eight days after the home invasion. Over the defense's objection, the State entered the two videos into evidence. The State also entered into evidence several still photos taken from the video footage.

¶8.     The videos showed Trigg and Jarvis beside a white four-door Infiniti G35 with a roll of cash on the vehicle's console. Detective Ready testified that the police believed Trigg purchased the vehicle shown in the videos with money he stole during the home invasion. Also in the videos, Trigg wore a Presidential Rolex like the one stolen from Christopher, and Jarvis wore a gold coin necklace identical to Christopher's stolen necklace. The videos further showed Jarvis and Trigg in possession of Glock-style pistols like those Christopher reported the assailants used in the home invasion. According to Detective Ready's testimony, the videos were highly probative and helpful to the police in solving the home-invasion case. Detective Ready also stated that, at the time the police arrested Jarvis, Jarvis was wearing the gold coin necklace shown in the videos. At trial, Christopher positively identified the necklace as the one stolen from him during the home invasion.

¶9.     During the State's case-in-chief, Trigg testified that he and Jarvis committed the home invasion together. Trigg also identified Jarvis as the person with him in the two Facebook

5

videos. Jarvis, however, testified on his own behalf and denied having any part in the home invasion. After considering all the evidence and testimony, the jury convicted Jarvis of one count each of armed robbery, kidnapping, burglary of a dwelling, and conspiracy to commit armed robbery. The circuit court then sentenced Jarvis as a habitual offender to concurrent sentences in MDOC's custody of thirty-five years for armed robbery, thirty years for kidnapping, twenty-five years for burglary of a dwelling, and five years for conspiracy to commit armed robbery. Jarvis filed an unsuccessful motion for a new trial. Aggrieved, he appeals.

**DISCUSSION**

¶10.    Jarvis's sole argument on appeal is that the circuit court erroneously admitted into evidence the two Facebook videos. While acknowledging that the videos are clearly relevant to the question of his guilt, Jarvis contends that the videos' prejudicial effect far outweighed their probative value. We review the circuit court's decision to admit or exclude evidence for abuse of discretion. *Ambrose v. State*, 254 So. 3d 77, 139 (¶208) (Miss. 2018). "[R]eversal is appropriate only when a trial court commits an abuse of discretion resulting in prejudice to the accused." *Id.*

¶11.    Mississippi Rule of Evidence 403 "is an ultimate filter through which all otherwise admissible evidence must pass." *Id.* at 138 (¶203) (quoting *Batiste v. State*, 121 So. 3d 808, 863 (¶143) (Miss. 2013)). Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

6

evidence."

¶12. Here, the defense moved prior to trial to exclude the two Facebook videos Trigg posted of himself and Jarvis after the home invasion. Following a hearing on the matter, the circuit court determined the videos were relevant under Mississippi Rule of Evidence 401.[1] The circuit court next filtered the evidence through Rule 403 to determine whether the videos' danger of unfair prejudice substantially outweighed their probative value. In so doing, the circuit court stated:

> The State has set forth the reason[s] why [it is] . . . bringing this, and one is for identification purposes. The State will have witnesses or said that [it is] . . . going to have [a] witness or witnesses [who] will identify the [D]efendant from the video[s]. Also, there will be testimony apparently that the victim informed law enforcement that he felt like . . . these were Glocks, and also there was some distinctive jewelry in the video[s] showing a necklace with a medallion on it that the [c]ourt has seen and does find it [is] distinctive. I think taking into consideration the testimony about the gun, the identification of the [D]efendant, and the distinctive jewelry is certainly relevant[,] and in this case is more probative than prejudicial . . . .

Based on these findings, the circuit court admitted the videos into evidence over the defense's objection.

¶13. Our review of the record indeed reflects that the State offered the videos for recognized evidentiary purposes. The State used the videos to aid its identification of Jarvis as one of the perpetrators of the home invasion. In addition, the videos not only helped the State to establish that Jarvis and Trigg knew each other, but they also showed the men in possession of weapons like those used to commit the home invasion and in possession of

---

[1] Rule 401 defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the case."

property actually stolen during the home invasion. Because we cannot say the videos' probative value was substantially outweighed by any danger of unfair prejudice to Jarvis, we find no abuse of discretion in the circuit court's admission of the videos. We therefore find this assignment of error lacks merit.

## CONCLUSION

¶14. Because we find no abuse of discretion in the circuit court's admission of the two videos at issue, we affirm Jarvis's convictions and sentences.

¶15. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. C. WILSON, J., NOT PARTICIPATING.**